UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA TORNABENE,<br><br>          Plaintiff,<br><br>      v.<br><br>CITY OF BLACKFOOT, a political subdivision of the State of Idaho; and MARC CARROLL, in his individual and official capacity,<br><br>          Defendant. | Case No. 4:22-cv-00180-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.  INTRODUCTION

Before the Court are (1) Defendants City of Blackfoot and Marc Carroll's Motion for Protective Order (Dkt. 23); (2) Plaintiff Lisa Tornabene's Motion to Compel Production of Documents and Depositions and for Sanctions (Dkt. 24); and (3) Defendants City of Blackfoot and Marc Carroll's Motion for Sanctions (Dkt. 27). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. In the interest of avoiding further delay and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court addresses the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court will deny in part Defendants' motion for protective order, grant in part and deny in part Tornabene's motion to compel and for sanctions, and deny Defendants' sanctions motion.

## II.  BACKGROUND

**A.      Factual Background**

{Plaintiff Lisa Tornabene worked for the City of Blackfoot from June 2015 until August 2021 as the City's Human Resource Director. Tornabene, along with other City staff, began working remotely in March 2020 when the pandemic hit. Tornabene continued this arrangement until early September 2020, at which time she was diagnosed with COVID-19. She was severely ill for approximately six weeks. In December 2020, Tornabene developed long-haul COVID-19 and experienced lung and breathing problems, chronic fatigue, and vertigo. On her nurse practitioner's advice, Tornabene requested the City allow her to continue working from home. Initially, the City accommodated Tornabene's request to work from home.

In April 2021, however, Mayor Carroll met with Tornabene and advised her that an essential function of her HR Director position was having regular in-person office hours. In response, Tornabene provided a letter from her medical provider who opined it was "medically necessary" for Tornabene to continue working remotely until she more fully recovered from long-haul COVID-19 symptoms. Eventually, the City denied Tornabene's requested accommodation based on its determination that an essential function of Tornabene's position was regular, in-person office hours. When Tornabene informed the City she could not return to regular, in-person office hours, even on a part-time basis, the City terminated her employment on September 9, 2021.

**1.   Procedural Background**

In April 2022, Tornabene filed this lawsuit against the City and Mayor Carroll, alleging they violated federal and state laws by failing to reasonably accommodate her COVID long-hauler's syndrome. The parties agreed to a stipulated litigation and discovery plan, defining the scope of discovery and including a protocol for searching electronically stored information

("ESI"). The Scheduling Order, entered on August 22, 2022, set the deadline for completing fact discovery on June 16, 2023, and the deadline for filing dispositive motions on July 14, 2023.

### a. Discovery Plan

In the stipulated Discovery Plan, the parties agreed to perform "narrowly tailored" keyword searches for ESI documents, to share their search methodology for responding to requests for production, and to identify a liaison "who is responsible for, and knowledgeable about (or has access to a person knowledgeable about) that party's ESI." (Dkt. 12-1 at 7-8). The parties did not specify any keyword search terms in the Discovery Plan, but they agreed to the timeframe to preserve all ESI, including emails and text messages from 2015 through the date of Discovery Plan, July 21, 2022; the custodians who would preserve their ESI for this designated timeframe (City Council, Mayor, HR Office, each Department Head or Director, Tornabene, and Mayor Carroll); and the databases from which ESI would be preserved ("[a]ll servers, computers, tablets, etc., used by the City of Blackfoot" and by Mayor Carroll). (Dkt. 12-1 at 2). The Discovery Plan also required the producing party "be able to demonstrate that the [ESI] search was effectively designed and efficiently conducted." (Dkt. 12-1 at 7-8).

### b. Discovery Disputes

Over the course of discovery, the parties exchanged multiple meet-and-confer letters. Defendants sent emails and letters requesting deposition dates; they maintain Tornabene failed to respond to these requests in a timely manner. Tornabene sent several letters asking Defendants to supplement their discovery responses. After continued back-and-forth between the parties, the parties agreed to set all depositions in early June 2023.

On May 16, 2023, Tornabene's counsel reached out to defense counsel to ensure deposition dates were set and inquire about Defendants' supplementation of discovery. Defendants responded, requested key word searches for text messages, but did not respond regarding emails.

(Dkt. 24-14). Unfortunately, on May 20, counsel for Tornabene suffered a serious knee injury. (Dkt. 24-2 at ¶ 16). As a result, the parties extended the litigation deadlines by two months from June 16 to August 18. (Dkts. 20, 21).

On June 21, 2023, Tornabene supplemented her discovery responses. On June 22, Defendants also supplemented their discovery responses, providing some additional documentation but also asserting new objections. On July 5, Tornabene wrote another meet-and-confer letter, which provided specific Boolean search terms for ESI, including emails and text messages. On July 14, Defendants responded to Tornabene's July 5 letter, indicating they would conduct the key word search for emails and text messages and would "provide those to you when we have them." (Dkt. 24-18). After Tornabene sent a follow-up email inquiring about the status of the search on July 27, Defendants responded that the search had returned 54,000 email chains and that the search terms were overbroad. (Dkt. 24-19 at p. 1). Defendants further stated they had already turned over all relevant emails and would seek a protective order if Tornabene insisted on requesting the additional emails.  (*Id.*).

The parties exchanged multiple emails and discussed the matter on the phone, and Tornabene provided narrowed search terms. Additionally, Tornabene offered to do her own searches of the 54,000 emails. (Dkt. 24-2 at ¶ 24). Defendants did not conduct an additional ESI search using Tornabene's narrowed search terms.

### c.  Mayor Carroll's and Suzanne McNeel's Depositions and Production of ESI

Meanwhile, at the same time, the parties attempted to schedule depositions in anticipation of the August 18, 2023, discovery deadline. In her July 5 letter, Tornabene was focused on obtaining the additional ESI before setting depositions and did not provide Defendants with any deposition dates. Regardless, on July 6, Defendants served deposition notices setting the

depositions for Tornabene and her experts in early August. When Tornabene requested deposition dates for several witnesses, the parties were able to agree on dates for all the requested witnesses except for Greg Austin. (Dkts. 30-15, 30-16, 24-5).

On July 31, 2023, counsel for Tornabene reached out to the Court for an informal discovery dispute conference to try to resolve the issues. This attempt was unsuccessful, and Tornabene proceeded with the deposition of Mayor Carroll without the requested ESI. In his deposition, Mayor Carroll stated he did not personally search for text messages and had never been asked to search his emails. (Dkt. 24-22 at 24:9-13). Although Mayor Carroll did not believe he had any responsive text messages, he provided his cell phone to a detective to download any responsive information. (*Id.*).

On August 4, 2023, the day after Mayor Carroll's deposition, Defendants produced additional emails after Mayor Carroll reviewed his emails. According to Tornabene, none of these emails had previously been produced. (Dkt. 24-2 at ¶ 28). Defendants also produced Mayor Carroll's text messages on August 8 and after his deposition.

### d. Present Motions

On August 10, 2023, Defendants moved for a protective order. (Dkt. 23). Defendants seek a protective order ruling they do not have to use Tornabene's proposed search terms to collect and produce responsive documents because such search terms are over broad and disproportionate to the case's needs. Defendants further contend that because all communications between City officials and its insurance provider, IRCMP, and its agents, are privileged or protected by the work product doctrine, they are entitled to a protective order preventing discovery regarding these communications.

Tornabene responded with a motion to compel. (Dkt. 24). Specifically, she seeks an order compelling Defendants to use her proposed narrowed search terms to collect and produce

responsive documents; to take additional depositions because Defendants produced emails and videos after the depositions of Mayor Carroll and Suzanne McNeel; and to reopen discovery to depose Greg Austin, whose deposition the parties never scheduled. As a sanction, Tornabene asks the Court to bar Defendants from using at trial "any late-produced documents and information, including any ESI materials yet to be provided" and to require Defendants to pay the costs associated with her motion to compel and the reopening of any depositions.

After Tornabene filed her pending motion to compel and request for sanctions and after the close of discovery, Defendants filed their own motion for sanctions on September 8, 2023, based on Tornabene's production of a spreadsheet and emails related to damage mitigation during her deposition. As a sanction, they request Tornabene's complaint be "stricken." (Dkt. 27-1 at 7). Alternatively, Defendants request Tornabene "be precluded from offering evidence of damages as Defendants have not had an opportunity to determine if she properly mitigated her damages." (*Id.*).

### III.  ANALYSIS

**A.    Electronically Stored Information**

The Court first addresses whether Defendants have produced all responsive ESI in their control. Tornabene contends that Defendants failed to conduct an adequate search of their ESI in accordance with the parties' agreed ESI protocol and seek to compel Defendants to perform "a proper ESI search based upon the narrowed terms Plaintiff provided." (Dkt. 24-1 at p. 17). Defendants protest that Tornabene's keyword search is overly broad and not proportionate to the needs of the case, and the burden and expense of the proposed search "greatly outweighs its likely benefit." (Dkt. 23-1 at p. 8). They further assert that they have "fully responded to all discovery requests and produced all relevant documents." (Dkt. 26 at p. 11). Based on this representation, Defendants ask the Court to "enter a protective order finding that Defendants are not required to respond to the overbroad keyword search." (Dkt. 23-1 at p. 11).

### 1.  Discovery Framework

Rule 26(b) of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Although Rule 26(b) "is liberally interpreted to permit wide-ranging discovery of information," *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006), a court must limit discovery when the discovery is not proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C). A court must also limit discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). With respect to ESI, Rule 26 does not require a party to "provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The party resisting discovery of ESI carries the burden of showing that the information is not reasonably accessible because of undue burden or cost. *Id.*

Rule 34 of the Federal Rules of Civil Procedure allows any party to request the inspection or production of documents from another party and is one of the primary discovery tools available to litigants in the federal courts. *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 656 (C.D. Cal. 2005). In responding to requests under Rule 34, "a party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses, and, based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from [its] employees, agents, or others subject to its control." *Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020) (brackets, ellipses, and

quotation marks omitted) (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)). If the responding party asserts that no responsive documents exist or that it has produced all responsive documents, then the responding party should state that claim with "sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Hisle v. Conanon*, Case No. 1:17-cv-01400-LJO-SAB (PC), 2018 WL 4444959, at *4 (E.D. Cal. Sept. 14, 2018).

### 2.  Tornabene's Proposed Search Terms and the Adequacy of Defendants' ESI Search

The Court agrees the search terms Tornabene first proposed are overbroad and disproportionate to this case's needs. Tornabene's overbreadth proposal, however, did not excuse Defendants from performing an adequate search in the first instance. *Albert*, 536 F. Supp. 3d at 801 ("A reasonably accessible electronic document that is responsive to a discovery request is no different than a reasonably accessible paper document and must be produced without regard to the parties' agreement to use search terms."). Nor did it excuse Defendants from working with Tornabene to narrow those search terms to ensure they had produced all relevant ESI. *Id.* (noting the Federal Rules of Civil Procedure and the discovery plan "work in tandem"). As the court explained in *Albert*, typically a party conducts a prompt initial search for "low-hanging fruit" and later performs a more comprehensive search based on negotiated search terms. *Id.* at 800.

A review of the record, however, demonstrates Defendants' initial ESI search was inadequate and did not comply with the parties' stipulated Discovery Plan. To respond to Tornabene's discovery requests, which included requests for emails and other ESI such as text messages and social media messages, the City states it "searched its servers for emails relevant to Plaintiff's request to work remotely and produced those emails." (Dkt. 26 at p. 3). Suzanne McNeel, the City Clerk, performed this search. McNeel testified she searched her own emails and

Mayor Carroll's emails going back to 2015, using the Outlook search function. Without oversight from counsel, she identified those emails she believed were relevant to the litigation and printed them out for counsel to produce. (Dkt. 25-2 at 3-5, McNeel Dep. 9:2-16; 10:9-16; 105:11-112:1). She did not search the emails of any other custodians listed in the Discovery Plan, and she did not search her own text messages or those of any other City employee. (*Id.* at 3-5, 9, McNeel Dep. 9:2-16; 10:9-16; 105:11-112:1; 127:3-5). Although a named defendant, Mayor Carroll performed no search of his emails or text messages.

McNeel's and Mayor Carroll's deposition testimony makes clear that Defendants and their counsel engaged in unsupervised and undocumented self-collection to respond to Tornabene's discovery requests. This type of manual collection of information, including "by the document authors or custodians themselves," "may be appropriate in some situations." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1, 167 (2018). As one court noted, however, "parties and counsel that embark on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 934-35 (N.D. Ill. 2021). The pitfalls include the client's failure (1) "to identify all sources of responsive information," (2) "to preserve evidence," (3) to "find or provide to counsel all responsive documents and ESI," or (4) to "fully document how they conducted their searches." *Id.* at 935-37; *see also Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) (quoting *DR Distribs.*, 513 F. Supp. 3d at 934-35).

In this case, Defendants' self-search conducted without oversight by legal counsel, technical support, or a forensic expert, at the very least, raises questions regarding the accuracy

and completeness of their document collection. Before McNeel's and Mayor Carroll's depositions, Defendants represented to Tornabene (and to the Court's law clerk) that they had produced all relevant ESI. On that basis, they refused to work with Tornabene to narrow the search terms and to conduct a second ESI search in compliance with the Discovery Plan. Later, however, Defendants produced additional emails and text messages after completing McNeel's and Mayor Carroll's depositions. Because Defendants did not produce these documents before the depositions and have failed to explain what search they performed to produce these additional emails and text messages, their ESI search appears to have been inadequate. Additionally, whether Defendants have preserved or searched the emails of any of the custodians to which the parties agreed in the Discovery Plan is unclear.

This lack of clarity in Defendants' self-search "are sufficient to highlight the risks of such self-search processes." *Benanav*, 2022 WL 3587982, at *4.  Although the parties here did agree in their Discovery Plan to a systematic procedure for collecting ESI to mitigate these risks, Defendants did not follow such agreement. Accordingly, the Court orders the parties to meet and confer in good faith to negotiate search terms designed to capture documents that are responsive to Tornabene's discovery requests in accordance with the parties' Discovery Plan. Any search using keywords should include the emails of any custodians agreed upon in the Discovery Plan. The parties should consider, however, whether the number of Defendants' email accounts to be searched can be limited in view of Rule 26's proportionality requirements.

**B.     Deposition of Greg Austin**

Tornabene also requests an extension of the discovery deadline for the limited purpose of deposing Greg Austin. Initially, Tornabene planned on deposing Austin and another witness on July 25, 2023. On July 18, Tornabene sought to confirm with Defendants that Austin remained available on July 25 for his deposition and requested new dates, if not. (Dkt. 24-2 at ¶ 36).

Defendants responded they would be available on August 18, which was also the discovery deadline, and Tornabene noticed Austin's deposition for August 18. (*Id.* at ¶ 37). Later that same day, Defendants informed Tornabene that Austin was not available on that date after all and proposed that Tornabene take Austin's deposition on August 9 or 10. (*Id.* at ¶ 38). As Tornabene's counsel had a conflict on those dates, Tornabene proposed August 21-one business day after the discovery deadline. (*Id.*) Defendants refused to extend the discovery deadline by one business day, and Tornabene was unable to depose Austin. (*Id.*)

Rule 16 of the Federal Rules of Civil Procedure grants the Court discretion to modify the scheduling order upon a showing of good cause. Fed. R. Civ. P. 16(b)(4); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Where that party has not been diligent, the inquiry ends, and the motion is denied. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 609.

Defendants argue that Tornabene did not diligently pursue discovery in this case and that, as a result, she cannot show good cause to modify the scheduling order. Perhaps, as Defendants contend, Tornabene should have been more responsive in providing deposition dates. Defendants do not dispute, however, that Tornabene timely requested dates for Austin's deposition and that she accepted the date Defendants offered within the discovery timeframe. Given the totality of the circumstances, the Court finds that Tornabene exercised due diligence in attempting to conduct

Austin's deposition within the discovery deadline. Accordingly, the Court finds good cause to modify the scheduling order to accommodate Mr. Austin's deposition.

## C.      ICRMP Documents

Tornabene requests Defendants produce all correspondence between Defendants and ICRMP, its insurer, related to her request for an accommodation and her termination. Defendants seek a protective order preventing discovery these of communications, arguing they are attorney-client privileged or subject to the work product doctrine.

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects 'from discovery documents and tangible things that are prepared in anticipation of litigation'" or for trial by or for another party or its representative. *See In re Grand Jury Subpoena*, 357 F.3d 900, 906-07 (9th Cir. 2004) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The party claiming a privilege must present "competent evidence that would tend to support an inference that any of the documents they have withheld was prepared in anticipation of litigation or for trial." *McCaugherty v. Siffermann*, 132 F.R.D. 234, 245 (N.D. Cal. 1990).

In this case, Defendants present little evidence to support its blanket assertion of attorney-client privilege or work product over all communications between City officials and ICRMP relating to the Tornabene's requested accommodation and termination. *See id.* (explaining a party must assert its claim of work product protection on a document-by-document basis and may not rely upon a blanket claim for privilege for an entire category of documents). Defendants have not submitted a privilege log identifying any communications with ICRMP which they have withheld

as privileged or work product.[1] Nor have Defendants submitted any declarations to support their assertion that any specific documents they withheld as work product were created because of the prospect of litigation.

Accordingly, the Court denies Defendants' motion for a blanket protective order protecting all communications between Defendants and ICRMP. To the extent Defendants contend such communications are privileged, they should produce a privilege log for Tornabene listing the documents individually; stating the date, author, and recipients of each document; describing the document with sufficient particularly to show a privilege applies; and stating the particular privilege asserted. If Tornabene contests the privilege, she should file a motion to compel.

**D.      Sanctions**

Discovery between parties should be cooperative and largely unsupervised by the district court. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219-20 (9th Cir. 2018). When that cooperation breaks down, the district court has broad discretion to regulate discovery conduct and, if needed, impose sanctions. *See* Fed. R. Civ. P. 37; *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 975 (9th Cir. 2017). "When justified, discovery sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 310-11 (C.D. Cal. 2020) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980)) (internal quotation marks and brackets omitted). Whether to issue sanctions, or to deny the discovery sought pursuant to such a motion, is within the district court's "wide discretion in controlling discovery." *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011).

---

[1]      Tornabene submitted Defendants' privilege log (Dkt. 25-4). The privilege log identifies documents between Mayor Carroll and defense counsel but no communications with ICRMP.

1. **Tornabene's Motion for Sanctions**

Tornabene seeks sanctions against Defendants under Rule 37(c)(1) of the Federal Rules of Civil Procedure on the grounds that Defendants did not conduct an appropriate ESI search; Mayor Carroll did not initially conduct any search of his own emails or text messages; and Defendant produced emails and texts involving Mayor Carroll for the first time on August 4, after his deposition. Further, Defendants did not produce five surveillance videos of Tornabene, which they planned to use to defend this matter, until she learned of them after deposing McNeel. Specifically, Tornabene requests Defendants be barred from using at trial any of the emails or texts "not timely produced" or the "late-produced" surveillance videos.

Rule 37 "gives teeth" to the disclosures required under Rule 26 by allowing a court to exclude from trial or a hearing, any witness or evidence that has not been properly identified in accordance with Rule 26(a) or (e). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "In addition to or instead of this sanction," the Court may impose "other appropriate sanctions," including issuing an order "prohibiting a disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(c)(1). "Sanctions should be commensurate to the sanctioned party's degree of fault and the other party's prejudice." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D. Wash. 2014).

Neither party is without fault here. While Defendants' initial ESI search appears to have been inadequate, Defendants produced additional ESI within the discovery period, and no information in the record establishes additional ESI remains missing. The surveillance videos were also produced during the discovery period. Thus, the Court denies at this time Tornabene's request that Defendants be prohibited from using any of this evidence at trial.

To mitigate any prejudice from Defendants' late disclosure of this information, i.e., to the extent that the additional ESI and surveillance videos were not produced until after Mayor Carroll's and McNeel's depositions were completed, the Court will permit Tornabene to reopen Mayor Carroll's and McNeel's depositions. Because the Court requires the parties to work on narrowing search terms for purposes of conducting an adequate search of ESI, Tornabene may delay these continued depositions until any additional ESI search is conducted and produced. The Court directs that Defendants will bear the burden of the expense of reopening Mayor Carroll's and McNeel's depositions.

### 2. Defendants' Motion for Sanctions

Defendants also seek sanctions against Tornabene for alleged discovery abuses. In their discovery requests, Defendants requested information regarding Tornabene's attempts to mitigate her damages. Specifically, in their first set of discovery served on September 8, 2022, Defendants propounded the following interrogatory:

> **INTERROGATORY NO. 9**: Please describe your efforts to obtain employment since your employment with the City of Blackfoot was terminated.

(Dkt. 27-2 at 22).

Tornabene responded to this interrogatory as follows:

> **RESPONSE TO INTERROGATORY NO. 9**: In response to Interrogatory No. 9, Plaintiff has attempted to find other comparable employment that she can perform from her home or is located locally because she still would need some help getting on site. Of course, doing so has been difficult because of the rural area in which they live and the limited work in HR that is comparable to the position she had with the City. Plaintiff has searched on internet-based job search engines, such as Indeed, Zip Recruiter, Glassdoor, usajobs.gov, etc. networked with former colleagues and employment groups for which she has subscribed, for a similarly-sized employer. To date, Plaintiff has been unable to find any comparable jobs due to the unique nature of her situation. Plaintiff considered applying for a position with Bingham County but believed her termination in this case would prevent her consideration due to the small community and the same insurer.
>
> Additionally, Plaintiff's efforts to apply for other employment was limited as she had to take FMLA leave to provide care in her home for her father who was on

**MEMORANDUM DECISION AND ORDER - 15**

hospice up until his death in March 2022. Plaintiff also took an offered unpaid position for the Department of Defense as an Employer Support of the Guard and Reserve (ESGR) as the Ombudsman Director for the State of Idaho in March 2018, which is a remote part-time position, while she continues to search for comparable paid work. Finally, Plaintiff is providing some care for her mother who lives with her. However, none of these things other than the FMLA leave she needed for her father would have prevented her from continuing doing her HR Director duties for the City of Blackfoot.

(*Id.*) Defendants did not propound any specific requests for production of documents relating to Tornabene's mitigation efforts, and Tornabene never supplemented her answer to Interrogatory No. 9.

Defendants deposed Tornabene on August 17, 2023, and learned for the first time that she had applied for several different jobs and had completed a spreadsheet for her counsel detailing the jobs for which she had applied; Tornabene, however, had not produced the spreadsheet in discovery. (Dkt. 27-2 at 34:11-35:2). When defense counsel asked for a copy of the spreadsheet, plaintiff's counsel objected based on attorney-client privilege. (Dkt. 27-2 at 34:11-41:14).

Eventually, plaintiff's counsel withdrew her objection based on attorney-client privilege and produced the spreadsheet Tornabene had completed. Plaintiff's counsel explained that she intended to produce the spreadsheet but that Defendants never requested any documents related to Tornabene's mitigation efforts. (Dkt. 27-2 at 34:11-41:14). At her deposition, Tornabene also provided for the first time her email correspondence with potential employers. Although she had forwarded the correspondence to her attorneys' office, they were not produced due to "a little communication issue" issue at plaintiff' counsel's office. (Dkt. 27-2 at 104:1-6). To allow defense counsel to thoroughly review the chart and emails, the parties took an hour-long lunch break after which defense counsel inquired at length about both the spreadsheet and work-search emails.

Based on Tornabene's delayed production of the spreadsheet, Defendants suggest she deliberately "concealed" the spreadsheet and contend that the Court should "strike Plaintiff's

complaint in its entirety," or alternatively, "Plaintiff should be precluded from offering evidence of special damages in this case" or "arguing that she could fulfill the job functions of an HR director from home." (Dkt. 27-1 at p. 12).

As explained above, Rule 37(c)(1) permits a court to exclude evidence that was not properly disclosed during discovery as required by Rule 26(a) or (e) or to impose other "appropriate sanctions," unless such failure was substantially justified or harmless. *See Yeti by Molly*, 259 F.3d at 1106. As a threshold matter, the Court addresses whether Tornabene violated Rule 26's disclosure requirements.

### a. Rule 26's Disclosure Requirements

Defendants argue that Plaintiff's counsel's conduct in this case is sanctionable because they possessed "at least two documents which had been requested on September 8, 2022," but failed to produce them "in their original or supplemental discovery response." (Dkt. 27-1 at p. 10). Defendants, however, do not identify any discovery request by which they sought *documents* evidencing Tornabene's efforts to obtain new employment after her termination. Instead, Defendants merely asked Tornabene in an interrogatory to "describe" her "efforts" to obtain new employment. The interrogatory did not inquire about documents. Tornabene answered that interrogatory, and Defendants never indicated to Tornabene that her response was insufficient. Nor did Defendants serve an additional interrogatory or request for production of documents asking for more detailed information.

Moreover, Rule 26(a)(1)(A) did not impose an obligation on Tornabene to affirmatively produce the spreadsheets or emails with potential employers without a request from Defendants. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012). Rule 26(a)(1)(A) requires a plaintiff to make certain initial disclosures to the defendant "without awaiting a discovery request." More specifically, under Rule 26(a)(1)(A)(iii), a plaintiff must provide "a

computation of each category of damages claimed" and must "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Rule 26(a) does not require a plaintiff to identify documents in her initial disclosures supporting a defendant's affirmative defenses, such as failure to mitigate damages.[2] *C.f. Beavers-Gabriel v. Medtronic, Inc.*, No. CIV. 13-00686 JMS, 2014 WL 7882099, at *4 (D. Haw. June 20, 2014) (citing 6 MOORE'S FEDERAL PRACTICE, § § 26.22[1] [a] (Matthew Bender 3d ed.) ("There is no obligation under Rule 26(a) for Defendants to identify documents in their Initial Disclosures that support Plaintiff's claims."). Because the information pertains to Defendants' affirmative defense of failure-to-mitigate, Tornabene was not required to include it in her initial disclosures and did not violate Rule 26(a)'s initial disclosure requirements.

Although Tornabene had no obligation to disclose the spreadsheet or emails without a specific discovery request from Defendants, Rule 26(e) required Tornabene to "supplement or correct" her response to Interrogatory No. 9 "in a timely manner" once she learned her response was incomplete in some material respect. Defendants' interrogatory asking her to describe her "efforts" to find new employment could fairly encompass the information contained in the spreadsheet detailing Tornabene's job search efforts. Once Plaintiff's counsel had more specific

---

[2]     "A defendant asserting failure-to-mitigate as an affirmative defense has the burden of proving that the plaintiff failed to mitigate his damages." *Equal Emp. Opportunity Comm'n v. Telecare Mental Health Servs. of Washington, Inc.*, No. 2:21-CV-01339-BJR, 2023 WL 5935609, at *4 (W.D. Wash. Sept. 12, 2023) (citing *Sangster v. United Air Lines, Inc*., 633 F.2d 864, 868 (9th Cir. 1980) (explaining defendants had the burden of showing the plaintiff could have mitigated her damages)).  With respect to mitigation of damages, the defendant must prove that (1) "the plaintiff failed to use reasonable efforts to mitigate damages, and (2) "the amount by which damages would have been mitigated." Ninth Circuit Manual of Model Civil Jury Instructions 5.3.

MEMORANDUM DECISION AND ORDER - 18

information regarding Tornabene's job search efforts, counsel should have supplemented Tornabene's answer to Interrogatory No. 9 with this information before her deposition.

### b.  Case Terminating Sanctions

Even if Tornabene did not strictly comply with Rule 26(e)'s supplementation requirements, however, such failure does not justify dismissing, or "striking" her complaint, as Defendants request. When a party seeks the dismissal of the plaintiff's complaint, as Defendants do here, the Court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions." *R & R Sails,* 673 F.3d at 1247 (citations omitted); *see also In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (Terminating sanctions are a severe remedy and should be imposed only "where the violation is due to willfulness, bad faith, or fault of the party.") (internal quotation marks and citation omitted). Defendants present no evidence showing Tornabene's late disclosure of the spreadsheet and emails was "willfulness, fault, or bad faith."

As explained, Tornabene had no obligation to produce the spreadsheet or emails without a specific request for production from Defendants. Although Tornabene should have supplemented her interrogatory answer before her deposition, Tornabene produced the spreadsheet and the emails at her deposition, and Defendants were able to question her about the information contained in these documents.  Under such circumstances, the Court finds no evidence that Tornabene or her counsel deliberately or willfully withheld the information or otherwise engaged in conduct that would justify the dismissal of Tornabene's complaint.

### c.  Substantially Justified or Harmless

In fact, for many of these same reasons, the Court finds that any failure by Tornabene to supplement her response to Interrogatory No. 9 in accordance with Rule 26(e) was substantially justified or harmless. Courts consider several factors to determine whether substantial justification

and harmlessness exist: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

First, while Defendants were no doubt surprised upon learning of the spreadsheet and job-search emails, Defendants were given an opportunity to review and question Tornabene about the information at her deposition, curing any surprise or prejudice. Moreover, the Court remains unconvinced that Tornabene's non-production of the spreadsheet and emails until her deposition (documents Defendants never specifically requested) prevented Defendants from hiring a vocational rehabilitation expert to opine on other job opportunities available to Tornabene based on her training and background. The burden of proving a failure-to-mitigate defense always rested on Defendants, which they knew. To meet this burden, Defendants must establish: "(1) that the damages suffered by plaintiff could have been avoided, i.e., that there were suitable positions available which plaintiff could have discovered and for which [she] was qualified; and (2) that the plaintiff failed to use reasonable care and diligence in seeking such a position." *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978). Defendants did not need the information on the spreadsheet or the emails to know whether they needed to hire a vocational rehabilitation expert to meet this burden.

Second, and unlike in *Yeti by Molly*, 259 F.3d at 1105, where the disclosures occurred only twenty-eight days before trial, no trial date has been set in this case. Finally, as explained, the Court does not find that Tornabene acted with bad faith or willfulness. Indeed, given Defendants did not specifically request the information they assert was responsive and withheld, "reasonable people could differ as to the appropriateness" of Tornabene's failure to provide the documents or

information earlier, making her conduct substantially justified.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted) (explaining an individual's discovery conduct should be found "substantially justified" under Rule 37 if it is a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action").

In sum, an analysis of the relevant facts favors a finding of substantial justification or harmlessness in this case, and thus the issuance of sanctions is not warranted.  *Lanard Toys*, 375 F. App'x at 713 (finding plaintiff's violation of Rule 26(a)(2)(B) did not cause prejudice to defendants or unfairness at trial where plaintiff's "supplemental" expert report was disclosed more than three-weeks before the expert-discovery deadline and more than seven months prior to trial). Accordingly, Defendants' request for sanctions against Tornabene is denied. No attorney fees will be awarded to either side arising from Defendants' motion for sanctions.

## ORDER

**IT IS ORDERED that:**

1.  Defendants City of Blackfoot and Marc Carroll's Motion for Protective Order (Dkt. 23) is **DENIED.**

2.   Plaintiff Lisa Tornabene's Motion to Compel Production of Documents and Depositions and for Sanctions (Dkt. 24) is **GRANTED in part and DENIED in part,** consistent with this decision.

3.  Defendants City of Blackfoot and Marc Carroll's Motion for Sanctions (Dkt. 27) is **DENIED**, consistent with this decision.

DATED: February 27, 2024

Amanda K. Brailsford
U.S. District Court Judge