DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA TORNABENE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BLACKFOOT, a political subdivision of the State of Idaho, and MARC CARROLL, in his individual and official capacity,<br><br>Defendant(s). | Case No. 4:22-cv-00180-AKB<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT TESTIMONY OF DEFENDANTS' EXPERT WITNESSES** |

COMES NOW Plaintiff Lisa Tornabene, by and through her counsel of record Casperson Ulrich Dusin PLLC, and submits this Memorandum in Support of Motion in Limine to Limit Testimony of Defendants' Expert Witnesses.

## I. INTRODUCTION

When Defendants disclosed their non-retained experts in this matter, they included one of the Defendants themselves (Mayor Carroll), as well as two of Defendants' employees who are also fact witnesses (Suzanne McNeel and Gregory Austin). Not only is this problematic from a clear bias standpoint due to their roles as either a Defendant or managers for Defendant City of Blackfoot

in this matter, but none of them qualify as experts in the areas for which they have been designated. Typically, non-retained experts have provided treatment of some kind or were serving in an independent role, such as a treating physician, and are uninfluenced by the opinions of or impacted by legal counsel. Consequently, there is generally little to no attorney-client communication between a non-retained expert and legal counsel. However, quite obviously, Defendants' alleged "non-retained" experts have been in constant communication with legal counsel related to Plaintiff and her case. Defendants either had to prepare expert reports for their "retained" experts to protect their communications with counsel or produce the communications to demonstrate the influence and impact legal counsel had on allegedly "non-retained" expert witnesses. Since Defendants chose not to submit expert reports from these individuals, and, to date, have never produced the relevant attorney-client communications associated with the areas of testimony here, its non-retained experts should not be permitted to testify under Rule 26(a)(2)(B). The only way Plaintiff could adequately cross-examine these witnesses is to either have their expert reports or know the influence of legal counsel. The communications between these "non-retained" experts and counsel have been claimed as privileged.

Furthermore, Defendants disclosed a retained expert who relied upon information that has not been produced to Plaintiff. Defendants disclosed an asserted retained vocational expert, DeLyn Porter. Mr. Porter made numerous assumptions that are not reliable, and further, he did not provide evidence of the underlying data upon which he claims to rely to form his opinions. Consequently, Mr. Porter must be barred from testifying at trial. Likewise, Defendants disclosed Keith Pinkerton as their asserted retained damages expert in this matter. Mr. Pinkerton relied upon Mr. Porter's opinion in order to reach the conclusions in his expert report. Because Mr. Porter's testimony must

be barred from trial for the reasons further explained below, Mr. Pinkerton likewise must be barred from providing opinions at trial that rely upon Mr. Porter's opinions.

## II. ARGUMENT

### A. Defendants' Non-Retained Expert Witnesses Must Be Barred from Presenting Expert Testimony

Defendants' non-retained experts should be excluded from providing testimony because Defendants have refused to produce communications between legal counsel and the alleged experts, and none of the non-retained experts are qualified to provide the alleged testimony. Defendants have treated their "non-retained experts," who are officials or management-level employees of the City, as retained experts. They have protected their attorney-client communications and work product with these individuals but then failed to provide expert reports for any of them. Ulrich Decl., ¶ 2, Ex. 1 (Defendants Privilege Log). Defendants cannot have it both ways, and its failure to provide expert reports precludes these claimed "non-retained experts" from testifying. It would be patently unfair to allow Defendants to both protect their attorney-client and work product privilege while influencing and shaping the opinions of the claimed "non-retained experts" who will offer opinions never disclosed in a report.

Fed. R. Civ. P. 26(b)(4)(C) governs the discovery of communications between a party's lawyer and a retained expert. Rule 26(b)(4)(C) states that communications between a party's lawyer and retained expert are generally not discoverable. *Id.* Communications between a party's lawyer and a retained expert are discoverable only to the extent that the communications:

(i) Relate to compensation for the expert's study or testimony;

(ii) Identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) Identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). Rule 26(b)(4)(C) does not apply to non-retained experts. Communications between a party's lawyer and non-retained expert are generally discoverable, including communications that involve attorney work product. *See PacifiCorp v. Northwest Pipeline GP,* 879 F. Supp. 2d 1171, 1211-1215 (D. Ore. July 16, 2012); *United States v. Sierra Pacific Industries*, 2011 U.S. Dist. LEXIS 60372, *3-11 (E.D. Cal. May 26, 2011); *Cooper v. Meritor, Inc.*, 2018 U.S. Dist. LEXIS 20103, *5 (N.D. Miss. Feb. 7. 2018). However, Defendants refused to produce the communications between legal counsel and Carroll, McNeel, and Austin, instead identifying them on a privilege log. Ulrich Decl., ¶ 2, Ex. 1.

Here, Defendants disclosed the following regarding the anticipated testimony of the "non-retained experts" above:

1. Mayor Marc Carroll, c/o Hall Angell & Associates. Mayor Carroll is expected to present evidence and testimony regarding the City's needs and requirements for the HR Director Position. Mayor Carroll is expected to testify regarding Plaintiff's ability to fulfill the essential job functions of the HR Director Position without having regular in-person office hours. Mayor Carroll will also testify regarding the reasonableness of the accommodations offered to Plaintiff which she rejected prior to her termination.
2. Suzanne McNeel, c/o Hall Angell & Associates. Ms. McNeel is the Clerk for the City of Blackfoot. Ms. McNeel is expected to present evidence and testimony regarding essential job functions of the HR Director which were being performed by others or were not being performed when Plaintiff refused to return to work in person. Ms. McNeel will offer opinion testimony regarding the strain on the City and its employees from not having a HR Director who had regular in person office hours.
3. Gregory Austin, c/o Hall Angell & Associates. Mr. Austin is the current HR Director for the City of Blackfoot. Mr. Austin is expected to present evidence and testimony regarding the demands of the HR Director position and the need for the position to have regular in-person office hours. Mr. Austin is expected to testify that it would be impossible to effectively perform the essential job functions of this position cannot be completed without regular in-person office hours.

Dkt. 24-12. The identified testimony does not appear to be based upon any specialized knowledge or expertise, as is required by Rule 702. Rather, it seems that the testimony is purely an attempt

by Defendants to take fact testimony, based upon Defendants' perspective, and allow them to submit opinion testimony to the jury based on the alleged topics listed above – primarily that regular, in-office hours were necessary to be able to perform the HR Director position. That is simply not permissible for many reasons. Essentially, Defendants are attempting to opine that no reasonable accommodation was required because in-office work was an essential function, though that question is one that must be determined by the jury. Though that is reason enough to bar the above "expert" testimony, the fact that Defendants have likewise failed to disclose the above individuals' communications with Defendants' legal counsel must result in Defendants being prohibited from presenting this "non-retained expert" testimony at trial. Ulrich Decl., ¶ 2, Ex. 1.

Furthermore, these experts are officials or paid employees of the City (or at least were at the time of the disclosures). This creates an impermissible conflict of interest. Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony … is not only relevant, but reliable. *Kimbho Tire*, 526 U.S. at 147, quoting *Daubert*, 509 U.S. at 589. That is, Rule 702 imposes a "gatekeeping" obligation on the trial court (*Daubert*, 509 U.S. at 597) to guard "the twin concerns of 'reliability' . . .and 'helpfulness.'" *Stilwell v. Smith & Nephew*, *Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)(quoting *United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004). "Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which *can* lead juries to give me more weight to their testimony." *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1064-65, overruled on other grounds in *Estate of Barabain v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014).

"[T]estimony of expert witnesses whose compensation is contingent upon the outcome of the case must be excluded." *Straughter v. Raymond*, No. CV 08-2170 CAS CWX, 2011 U.S. Dist. LEXIS 53195, at *2 (C.D. Cal. May 9, 2011); accord *Outmet v. USAA Casualty Ins. Co.*, No.

EDCV 00-00752-VAP, 2004 U.S. Dist. LEXIS 31199, at *2 (excluding expert opinion testimony where expert retained on contingency fee agreement because her "compensation …depend[ed] on the outcome of this case"). "[P]ermitting [a] defendant to testify as a damages expert in his own case is akin to hiring an expert witness to testify on a contingency fee basis because defendant's recovery, if any, will be tied in part to his own testimony. Such contingency arrangements are void against public policy and are grounds for excluding the witness." *Andreas Carlsson Prod., AB v. Barnes*, CV 10-8396, 2012 U.S. Dist. LEXIS 197177, *4 (C.D. Cal. July 19, 2012). It is no different here – allowing an actual defendant (Mayor Carroll) to testify as an "expert" in his own case is simply impermissible because of the extreme and inherent unacceptable bias.

In addition, none of these witnesses are qualified to submit any expert opinions as to where the HR Director must perform his or her work. Tornabene successfully performed her position as HR Director working primarily from home and coming to the office when necessary or when she was able. Dkt. 53 at 2-5. Moreover, Mayor Carroll has never worked in HR. Dkt. 34-4 at 16. McNeel served as the City Clerk, and although she did some HR functions, her role has been primarily as the Clerk. Tornabene was hired because the City of Blackfoot needed an HR Director. Dkt. 34-5 at 3-4. Austin is a former police officer that the City of Blackfoot had to train to conduct HR work. Dkt. 61-6. He was hired to replace Tornabene and his opinion during his testimony was that Tornabene was a great HR Director. Dkt. 61-6. None of these individuals should be permitted to testify as "non-retained experts" at trial. Any testimony from them should be only fact-based testimony, not misplaced expert opinion testimony.

**B. Defendants' Retained Experts' Testimony Must Be Barred or Significantly Limited**

Defendants have identified two retained experts – DeLyn Porter, disclosed as a vocational

expert, and Keith Pinkerton, disclosed as a damages expert. Both experts must be barred from testifying as to their disclosed opinions at trial, as they are speculative, lack foundation, and do not comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure.

Rule 702 allows for a witness qualified as an expert by knowledge, skill, experience, training, or education to provide an expert opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The court occupies a "gatekeeping" role to ensure the scientific or technical evidence "is not only relevant, but reliable." *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 589, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Factors for a court to consider that bear on the court's gatekeeping function include: (1) whether the expert's technique or theory can be tested; (2) whether the technique or theory have been the subject of peer review and publication; (3) the known or potential error rate of applying the technique or theory; (4) whether there exist standards and controls that apply to the technique's operation; and (5) whether the technique or theory is generally accepted within the relevant scientific community. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)(citing *Daubert*, 509 U.S. at 592-94). The offering party "bears the burden of demonstrating admissibility" of that testimony. *Bennett v. Am. Gen. Life Ins. Co.*, No. CV 13-4822 DMG (Ex), 2015 WL 12751701, at *4 (C.D. Cal. Feb. 6, 2015) (citing *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)).

**1. DeLyn Porter Must Be Barred from Testifying at Trial**

Mr. Porter does not have the necessary expertise to qualify as an expert pursuant to Rule 702 for some opinions he provides and further, his opinions do not comply with the necessary reliability to be admissible under Rule 703. Rule 703 allows an expert witness to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Additionally, expert witnesses may rely on facts or data that would not otherwise be admissible provided that experts in the field "would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* "The trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)(quoting *Daubert*, 509 U.S. at 597). Expert opinion is "reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)(alterations removed)(quoting *Kumho Tire*, 526 U.S. at 149).

Without any evidence or explanation, Mr. Porter attempts to opine on a legal question, and a question regarding which he has no personal knowledge to answer, asserting that "[t]he principle [sic] duties of [Ms. Tornabene's Human Resources Director Position with the City] are performed in a general office environment." Porter Report, at 12. This is simply not supported by the facts, and further, attempts to invade the province of the jury as to whether being physically present at work is an essential function of the job. *Ridgeway v. Wal-Mart, Inc.,* 946 F.3d 1066, 1082 (9th Cir. 2020). He does not have the necessary knowledge and is not in a position to provide an "opinion" as to whether Tornabene's principal duties are performed in an office environment because that is an issue that must be addressed through testimony of pertinent witnesses with actual knowledge based upon the day-to-day functioning of the position. Moreover, Mr. Porter attempts to instruct

the jury on the law regarding allowing remote work accommodations, stating "[t]he Equal Employment Opportunity Commission (EEOC) released updated guidance stating that businesses will not be required to automatically allow remote work as a reasonable accommodation under the Americans with Disabilities Act (ADA) as the threat of COVID-19 dissipates," and then goes on to provide make further attempts to instruct the jury on the law by stating:

> This guidance applies to those employers covered by Title I of the ADA. Title I applies to private employers with 15 or more employees. **It also applies to state and local government employers,** employment agencies, and labor unions. All nondiscrimination standards under Title I of the ADA also apply to federal agencies under section 501 of the Rehabilitation Act.
>
> Under Title I, employers must provide qualified employees with disabilities with reasonable accommodations to do their jobs, except when such accommodation would cause an undue hardship. **An adjustment that eliminates an essential function or fundamental duty of a position is not considered a reasonable accommodation.**

Ulrich Decl., ¶ 3, Ex. 2 (Porter Report pg. 12). Setting aside the fact that this opinion does not pertain to long COVID and an incorrect statement of the law, not only does Mr. Porter not have the expertise to opine on his interpretation of what is required under the ADA, as he does not have specialized legal knowledge or expertise, it is entirely improper for Mr. Porter to make any kind of statement of the law. That is exclusively the job of the Court. *See, e.g., Newson v. Runnels*, 378 Fed. App'x. 641, 642 (9th Cir. 2010); *see also United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995)("While the jury is the arbiter of the facts, the judge is the arbiter of the law: 'the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.'"). Because Mr. Porter's opinion on pages 11 through 12 (ending in "An adjustment that eliminates an essential function or fundamental duty of a position is not considered a reasonable accommodation") invades the province of the jury and the Court, and is not based upon a proper foundation, the opinions must be excluded under Rule 703 and pursuant to case law as noted above.

Defendants also seek to offer Mr. Porter's opinion as it relates to their burden to prove failure of Ms. Tornabene to mitigate her damages. To establish that Ms. Tornabene failed to mitigate her damages, Defendants bear the burden to prove that (1) during the time in question, there were substantially equivalent jobs available that Ms. Tornabene could have obtained, and (2) that she failed to use reasonable care and diligence in seeking such a position. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995). "Substantially equivalent employment" is employment that provides "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [ ] claimant has been discriminatorily terminated." *Marquez v. Glendale Union High Sch. Dist.,* 2018 U.S. Dist. LEXIS 173343, at *25 (D. Ariz. Oct. 9, 2018) (citing *Cassella v. Mineral Park, Inc.,* 2010 U.S. Dist. LEXIS 11272, at *5 (D. Ariz. Feb. 9, 2010)).

Instead of applying the standard for mitigation in the Ninth Circuit, Mr. Porter applies more of a vocational assessment of someone's ability to work in the future based on any skills that the person possesses. He does not focus his analysis at all on "substantially equivalent employment" at all, instead including jobs she could, in theory, perform, but which are certainly not equivalent to her prior HR Director job. Mr. Porter provides a number of job postings which fail to indicate compensation for the position. Ulrich Decl., ¶ 3, Ex. 2 (Porter Report pgs. 15-38). In fact, there are only a few jobs that provide a salary range or hourly rate. However, one of those indicates the employer prefers a "Master's Degree or J.D" and the other has no benefits, paid time off, or schedule even listed. Ulrich Decl., ¶ 3, Ex. 2 (Porter Report pgs. 24 & 33). In addition, Plaintiff's loss of her PERSI retirement benefits do not appear to be accounted for with either position. Neither of these jobs meet the standard applied here, which is substantially equivalent employment. Mr. Porter's failure to demonstrate that either of these jobs would pay Plaintiff the

equivalent of what she made at the City makes the postings and his testimony inadmissible. *See Kawar v. JPMorgan Chase & Co.,* 2009 U.S. Dist. LEXIS 51893, at *7 (D. Ariz. 2009) (failure to show that job opportunities were substantially equivalent in pay to plaintiff's position was insufficient for defendant to meet its burden on a failure to mitigate defense). Consequently, Mr. Porter's testimony is insufficient under *Daubert*.

Further, Defendants attempt to have Mr. Porter testify that Ms. Tornabene "has access" to certain job openings from unnamed databases, at an unidentified time, and presupposes that she would have obtained any one of these jobs, nearly all of which are not Human Resource Manager jobs. Mr. Porter takes the unsupported and speculative assumption that Ms. Tornabene would have obtained any of the HR manager jobs and that they would have paid her the "highest wage-earning capacity," which Mr. Porter then relies upon to provide speculative earnings on Ms. Tornabene's part. Ulrich Decl., ¶ 3, Ex. 2 (Porter Report pg. 39-20). These opinions are purely speculative and lack foundation. First, Mr. Porter provides a list of positions he asserts were available within a fifty-mile radius of Blackfoot, Idaho. However, nowhere is there any identification of when those jobs were available, what databases they are from, or, quite frankly, whether they existed at all. None of these documents or alleged job openings were produced by Defendants in discovery for purposes of its failure to mitigate defense and none were included with Mr. Porter's report. Ulrich Decl., ¶ 4. It appears that, rather than provide the original posting or web address for those positions as they existed at whatever time Mr. Porter asserts they were available, he has simply rekeyed information into his report. Mr. Porter's report only indicates he "ha[s] conducted a job search of current job openings within a 50-mile radius of Blackfoot, Idaho that Ms. Tornabene is considered qualified to pursue." Ulrich Decl., ¶ 3, Ex. B (Porter Report pg. 15). Again, the standard for a failure to mitigate defense is not "considered qualified to pursue." Further, Mr. Porter's failure to

provide any indication or evidence of these job postings make his opinions hearsay (Fed. R. Evid. 802), violate the best evidence rule (Fed. R. Evid. 1002), and fail to comply with the disclosure requirements for retained experts or initial disclosures under Federal Rule of Civil Procedure 26. Even setting the numerous inadmissibility issues aside, it would not only be speculative, but patently unfair to allow Mr. Porter to testify as to what positions were available to Plaintiff and asserting she should have applied for them when there is no evidence as to whether she even had access or knowledge of these positions being available.

Moreover, Mr. Porter improperly asserts that Ms. Tornabene should have obtained a job as a Human Resource Manager in Southeast-Central Idaho that would have paid her $49.97 per hour, or the annual equivalent of $103,937.60. Ulrich Decl., ¶ 3, Ex. 2 (Porter Report pg. 40) Out of all the positions that Mr. Porter speculates Ms. Tornabene should have applied for and would have been hired for, only one is a Human Resource Director position. The rest are either supportive HR roles or jobs like "Bookkeeper" and "Business Specialist III." Mr. Porter obtained no data to suggest that the one HR management position he was able to find pays anywhere near $104,000 dollars a year. In fact, he has no data on the pay for that alleged position at all. His position on how much Ms. Tornabene should be making is further undermined by the actual evidence of what she made as an HR Director at the City of Blackfoot - $27.85 per year, or the annual equivalent of $57,928.00. This demonstrates that not only are Mr. Porter's opinions speculative, but they are based upon insufficient facts and unreliable principles and methods. *See* Fed. R. Evid. 702. Mr. Porter's expert opinion regarding positions available, what jobs he asserts Ms. Tornabene could have applied for and obtained, and how much income she "should" be making, are speculative, not based upon sufficient facts or data, and are based upon unreliable principles and methods. Further, as further explained above, the underlying "data" violates multiple rules of evidence.

Further, Mr. Porter's opinion fails to comply with the legal standard for the failure to mitigate defense. Consequently, Mr. Porter must not be permitted to testify at trial.

**2. Keith Pinkerton Must Be Barred from Testifying at Trial**

Mr. Pinkerton's economic damages report suffers from many of the same defects as those of Mr. Porter, primarily because Mr. Pinkerton's report relies, in large part, on Mr. Porter's report. Other opinions also lack relevance. Further, Mr. Pinkerton does not have the necessary expertise to opine regarding Ms. Tornabene's medical condition or ability to perform certain jobs based upon her medical condition. Consequently, like Mr. Porter, Mr. Pinkerton must be barred from testifying at the trial of this matter.

First, numerous opinions provided in Mr. Pinkerton's expert report rely upon Mr. Porter's speculative and unsupported opinions which lack foundation and fail to comply with the Rules of Evidence. Mr. Pinkerton's "Rebuttal Opinion 1" concludes: "Dr. Bowles calculates damages through October 31, 2025. This damage period does not align with known facts revealed during the discovery process. Mr. Pinkerton relied upon Mr. Porter's report to come to this conclusion, stating: "The report of Mr. Delyn Porter, NA, CRC, CIWCS indicates numerous job openings in the relevant geographic marketplace for which Ms. Tornabene was qualified…Mr. Porter also opined that Ms. Tornabene's job search reflected 'marginal effort in seeking new employment.'" Ulrich Decl., ¶ 3, Ex. 2 (Pinkerton Report pg. 2). Similarly, Mr. Pinkerton's "Rebuttal Opinion 4" states: "The opinions of Mr. Delyn Porter indicate that no damages after March 2022 should have been considered." Ulrich Decl., ¶ 3, Ex. 2 (Pinkerton Report pg. 5). This opinion is quite clearly reliant upon the inadmissible expert testimony of Mr. Porter, but the supporting information Mr. Pinkerton provides as to the basis of his opinion further indicates his reliance upon Mr. Porter's report: "As noted previously, the report of Mr. Delyn Porter, NA, CRC, CIWCS indicates

numerous job openings in the relevant geographic marketplace for which Ms. Tornabene was qualified. . .In a telephone call with Mr. Porter, he indicates that on a more probable than not basis, Ms. Tornabene should have been able to fully mitigate future losses by no later than six months following termination." Ulrich Decl., ¶ 3, Ex. 2 (Pinkerton Report pg. 5).

As explained above, Mr. Porter failed to demonstrate that any of these positions he claimed Plaintiff was "qualified to pursue" were "substantially equivalent" to her position with the City. Further, Mr. Porter provided no indication for the specific timeframe these jobs were open, where the jobs were posted, nor is there any information to indicate whether Ms. Tornabene had access to the postings or if she was even made aware of them. They also do not apply the correct legal standard. The lack of information, foundation, and relevance of the information in Mr. Porter's report in turn necessitates that Mr. Pinkerton's opinion, which relies on Mr. Porter's opinion, to be barred at trial. As one court within the Ninth Circuit held under similar circumstances:

> Plaintiffs represent that because Expert Browne merely "accepted as true all of [Expert] Mallinson's conclusions and then calculated damages," there is no basis to exclude Expert Browne's report under Rule 702 […]. In any event, Rule 402 proscribes irrelevant evidence as inadmissible. Plaintiff conceded that "if Mr. Mallinson's conclusions are not able to be presented at trial, then Mr. Browne would have no foundation or ability to calculate the damages." Therefore, because Mallinson's expert report is inadmissible, Browne's expert report is irrelevant and likewise inadmissible under Rule 402.

*Postpichal v. Cricket Wireless, LLC*, No. C 19-07270 WHA, 2023 U.S. Dist. LEXIS 78323, *13-14 (N.D. Cal. May 4, 2023). This situation is no different. Because Mr. Pinkerton relied upon Mr. Porter's expert report, which is inadmissible, Mr. Pinkerton's opinions relying on Mr. Porter's report are likewise inadmissible.

## III. CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court bar or limit the

testimony of Defendants' expert witnesses as specified above.

DATED this 26th day of June, 2025.

/s/
DeAnne Casperson
CASPERSON ULRICH DUSTIN PLLC