UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA TORNABENE,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF BLACKFOOT, a political subdivision of the State of Idaho; and MARC CARROLL, in his individual and official capacity,<br><br>        Defendants. | Case No. 4:22-cv-00180-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are two motions to exclude expert testimony: Plaintiff Lisa Tornabene's Motion in Limine to Limit Testimony of Defendants' Expert Witnesses (Dkt. 73) and Defendants City of Blackfoot and Mayor Marc Carroll's Motion in Limine to Exclude Expert Testimony (Dkt. 74). The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' submissions. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons stated below, the Court grants in part and denies in part both motions.

## II. BACKGROUND

The City of Blackfoot employed Tornabene as the human resources director (HR Director) from 2015 until her termination in September 2021. After contracting COVID-19 in September

**MEMORANDUM DECISION AND ORDER - 1**

2020, Tornabene developed long-COVID symptoms. Her treating nurse practitioner, Guss Grimmett, advised Tornabene to continue working remotely, which she did until April 2021. At that time, Carroll met with Tornabene and advised her that having regular, in-person office hours was an essential function of the HR Director position. Grimmett, however, opined Tornabene should continue to work remotely, and Tornabene requested that the City accommodate her by allowing her to work remotely while going to the office as necessary.

Despite Grimmett's recommendation, Carroll informed Tornabene she must either resume regular office hours or take short-term disability leave. Because Tornabene felt her symptoms were too unpredictable to maintain a fixed schedule, she opted to take leave. When her leave expired in July 2021, Tornabene submitted medical documentation from Grimmett stating remote work was "medically necessary." The City requested a second medical opinion, denied Tornabene's accommodation request, and terminated her employment in September 2021.

Following her termination, Tornabene brought this action against Defendants, alleging numerous claims (Dkt. 1). Eventually, Defendants moved for summary judgment, and the Court granted that motion in part and denied it in part. The Court concluded Tornabene had shown genuine issues of material fact for trial regarding her claims for disability discrimination for wrongful termination and for failure to accommodate (Dkt. 53).

Among the central issues for trial are whether regular in-person office hours were an essential function of the HR Director position; whether remote work while going to the office as necessary was a reasonable accommodation for Tornabene's long COVID; and whether the City engaged in the required interactive process before terminating Tornabene. Trial is scheduled for October 27, 2025. The parties have each filed a motion seeking to limit or exclude expert testimony.

MEMORANDUM DECISION AND ORDER - 2

### III.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The rule permits testimony from witnesses with specialized "knowledge, skill, experience, training, or education" when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The testimony must be "based on sufficient facts or data," constitute "the product of reliable principles and methods," and reflect reliable application of those principles and methods to the case facts. Fed. R. Evid. 702(a)-(d). Rule 702 clarifies the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of evidence. Fed. R. Evid. 702 Comm. Note (1). Rule 702(d) emphasizes that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology. Fed. R. Evid. Comm. Note (2).

District courts serve as gatekeepers in determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). This gatekeeping function requires the assessment of both relevance and reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Expert testimony is relevant when "the knowledge underlying it has a valid connection to the pertinent inquiry" and reliable when "the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The reliability inquiry "focuses not on what the experts say, or their qualifications, but what basis they have for saying it." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (internal quotation marks omitted). District courts possess broad discretion in making reliability determinations. *Kumho*, 526 U.S. at 142.

## IV.  ANALYSIS

### A.  Tornabene's Motion to Exclude Defendants' Expert Witnesses

Defendants have disclosed five expert witnesses to testify at trial (Dkt. 73-2). They designated three as non-retained experts: (1) Carroll, the City's Mayor and one of the named Defendants; (2) Suzanne McNeel, the City Clerk and Tornabene's former supervisor; and (3) Gregory Austin, the HR Director who replaced Tornabene. Defendants also disclosed two retained experts: (1) DeLyn Porter, a vocational rehabilitation counselor; and (2) Keith Pinkerton, an economist. Tornabene seeks to exclude or limit the testimony of each of these witnesses.

#### 1.  Non-Retained Experts: Carroll, McNeel, and Austin

Tornabene moves to exclude Defendants' non-retained experts from presenting expert testimony (Dkt. 73-1 3). Defendants' disclosure provides that Carroll will testify regarding the "needs and requirements for the HR Director Position"; Tornabene's "ability to fulfill the essential functions" of that position "without having regular in-person office hours"; and "the reasonableness of the accommodation" the City offered Tornabene (Dkt. 73-2 at 18). Further, the disclosure provides that McNeel will testify regarding the "essential functions" of the position which others performed when Tornabene did not work in-person; and "the strain" Tornabene placed on the City and its employees by not working in-person (*id.*). Finally, the disclosure provides Austin will testify regarding the position's demands; the need for regular in-person office hours; and the "impossibility" of performing the position's essential functions effectively without being in-person regularly (*id.*). Tornabene challenges this testimony, arguing that these witnesses are not qualified as experts; there is an impermissible conflict of interest because they are (or were) paid City employees; and Defendants failed to produce communications involving these witnesses based on an assertion of attorney-client privilege or work product doctrine.

As a preliminary matter, the Court notes there are three types of witnesses who may provide opinion testimony: lay witnesses, non-retained (or non-reporting) witnesses, and retained expert witnesses. A retained expert is retained or specially employed to provide expert testimony and must provide a written report. Fed. R. Civ. P. 26(a)(2)(B). Unlike a retained witness, a non-retained witness is a hybrid fact and expert witness, who has both percipient knowledge of the disputed facts in the litigation and a qualifying expertise. *See, e.g.*, *Cantu v. United States*, No. CV 14-00219 MMMJCGX, 2015 WL 12743881, at *4 (C.D. Cal. Apr. 6, 2015) ("[T]he critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation for trial."). Non-retained witnesses do not need to provide a written report; rather, they only need to disclose the subject matter about which they are expected to present evidence and a summary of the facts and opinions about which they will testify. Fed. R. Civ. P. 26(a)(2)(C).

A lay witness may also offer opinion testimony under Rule 701. Unlike a retained or a non-retained expert, however, a lay witness's testimony is "not based on scientific, technical, or other specialized knowledge" within the scope of Rule 702. Fed. R. Evid. 701(c). Rather, a lay witness's opinion is "rationally based on the witness's perception" and must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(a)—(b). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Corona*, 359 F. App'x 848, 851 (9th Cir. 2009) (citing Fed. R. Evid. 701 advisory committee's note (2009 amendments)). There is no disclosure requirement under Rule 26 for lay opinion testimony.

The Court concludes Carroll, McNeel, and Austin are not qualified as expert witnesses under Rule 702. Defendants have not shown they have any scientific, technical, or other specialized knowledge. Further, Defendants' disclosure of their anticipated testimony does not identify any subject matter necessitating expert testimony. Defendants argue that they disclosed Carroll, McNeel, and Austin as non-retained experts because an "average member of the jury [will] not know what it takes to operate an HR department for the City" (Dkt. 75 at 3). That the jurors may lack of knowledge about the particulars of the City's HR department, however, does not mean those issues are beyond the jurors' common experience. Rather, an average juror will generally understand the role of HR personnel, an employee's job functions, her performance of those functions, her attendance at work, any strain on other employees who must cover for her, and other related topics. To the extent a juror is not familiar with such topics, expert testimony is not necessary to explain these common experiences.

Although Defendants have not qualified Carroll, McNeel, and Austin as experts under Rule 702, the Court concludes they may still provide lay opinions at trial under Rule 701. Based on their roles and experience at the City, they are likely to have lay opinions which are rationally based on their personal perceptions and will be helpful to understanding their testimony or to determining a factual issue. For example, the essential functions of the HR Director position will be a factual question for the jury. The Ninth Circuit Model Jury Instruction 12.6 instructs that, to determine the essential functions of a position, the jury must consider "the employer's judgment as to what functions of a job are essential," the job description, whether the position exists to perform the function at issue, the available employees who could perform that function, whether the function is "highly specialized," the time spent to perform the function, the consequences of

**MEMORANDUM DECISION AND ORDER - 6**

not performing the function, and the "work experience" of employees who held the position or hold similar positions.

Because Carroll, McNeel, and Austin have experience involving the HR Director's position at the City, they are likely to have personal knowledge about these facts. Further, they are likely to have personal knowledge about the circumstances under which the essential functions of the HR Director position could reasonably be performed—including whether the accommodation the City offered was reasonable. Assuming the appropriate foundation is laid at trial, Carroll, McNeel, and Austin may offer lay opinion testimony about these issues under Rule 701. Although the issues may be ultimate issues for the jury's determination, an opinion on these issues is "not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

Because the Court concludes Carroll, McNeel, and Austin are lay witnesses under Rule 701 and not non-retained witnesses under Rule 702, it does not address whether disclosing a non-retained expert who is also a paid employee for the disclosing party poses a conflict of interest or how the attorney-client privilege and work product doctrine apply to communications when a non-retained witness is the disclosing party's employee.

### 2. DeLyn Porter

Tornabene also moves to exclude or limit the testimony of Defendants' retained expert, DeLyn Porter, a vocational specialist (Dkt. 73-1 at 8; Dkt. 73-2 at 21). Specifically, Tornabene objects to Porter testifying that "the principal duties of the [HR Director] position are performed in a general office environment"; the guidance of the Equal Employment Opportunity Commission (EEOC) provides that businesses are not required to automatically allow remote work as a reasonable accommodation for a disability; there were numerous, available job openings for which Tornabene was qualified; and Tornabene's wage-earning capacity is $103,937.60 per year.

MEMORANDUM DECISION AND ORDER - 7

a.    **Sufficient Facts or Data**

An objective of Porter's expert report is to show Tornabene could have but did not mitigate her damages. To establish a failure to mitigate damages, a defendant must prove that: (1) during the time in question, there were substantially equivalent jobs available, which the plaintiff could have obtained; and (2) the plaintiff failed to use reasonable diligence in seeking one of these available jobs. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995). A defendant cannot meet this burden simply by showing the plaintiff failed to search for work; rather, a defendant must show job availability. *Id.* (finding no failure to mitigate where employer "presented no evidence as to the availability of comparable employment").

Tornabene challenges the sufficiency or reliability of certain data on which Porter relies for his mitigation opinions. First, Tornabene challenges Porter's reliance on ten "job postings" to opine that there were "numerous current job openings" within a 50-mile radius of Blackfoot for which Tornabene was "qualified to pursue based on her vocational profile" (Dkt. 73-2 at 35-58 (listing job postings); *id.* at 73-2 at 59). As Tornabene notes, Porter does not identify where he located these job postings, when the jobs were available, or (for most postings) what the salary and benefits the jobs were (Dkt. 73-1 at 10-11).

Defendants respond that Porter "detailed exactly where he found each and every job posting listed on his report" and that he located the job postings on "Indeed, an online job platform" or "the Idaho Department of Labor" (Dkt. 75 at 7). Porter's expert report, however, does not provide this information (*see generally* Dkt. 73-2). Because Porter's report does not disclose sufficient facts and data to determine whether the job postings on which he relies were available to Tornabene at a relevant time, the Court excludes Porter's opinions that: (1) there were "numerous job postings within a 50-mile radius of Blackfoot" for which "Tornabene [was]

qualified to pursue"; and (2) if Tornabene "were to actively seek new employment[,] she could secure new employment that would meet or exceed her earnings with the City" (Dkt. 73-2 at 59, 60).

Tornabene also argues the job postings are unreliable data because the jobs are not "substantially equivalent" (Dkt. 73-1 at 10). In support, Tornabene cites case law that "substantially equivalent employment" means "*virtually identical* promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which [the plaintiff] has been discriminately terminated" (*id.*) (emphasis added) (citing *Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 WL 4899603, at *25 (D. Ariz. Oct. 9, 2018)). The Court, however, does not need to address this issue because it concludes Porter may not rely on the job postings identified in his report for purposes of rendering an opinion.

Moreover, not all courts have held that "substantially equivalent employment" means "virtually identical." For example, the U.S. Supreme Court describes substantially equivalent employment as "suitable employment." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982) (noting duty to mitigate "requires the claimant to use reasonable diligence in finding other suitable employment"); *see also Odima*, 53 F.3d at 1497 (using term "suitable" employment). Meanwhile, other courts have construed substantially equivalent employment to mean "comparable employment." *See, e.g.*, *Brown v. Riverside Elementary Sch. Dist. No. 2*, No. CV-21-01569-PHX-DJH, 2024 WL 474528, at *5 (D. Ariz. Feb. 7, 2024) ("Other districts have construed the first prong of *Odima* as 'comparable' employment opportunities."). Although the Court agrees with Tornabene that the job postings Porter identifies are not likely "virtually identical" to the HR Director position, it is less inclined to agree that available jobs must be virtually identical for

MEMORANDUM DECISION AND ORDER - 9

purposes of mitigation—particularly in rural Idaho where the opportunity for virtually identical positions may be unlikely.

Second, Tornabene challenges Porter's opinion that Tornabene's most accurate wage-earning capacity based on her vocation profile is "an annual equivalent of $103,937.60" (Dkt. 73-1 at 12; Dkt. 73-2 at 60). Porter bases this opinion on his conclusion that Tornabene could have obtained a job earning $49.97 an hour (Dkt. 73-2 at 60). Porter, however, fails to provide sufficient data to support an opinion that Tornabene could have obtained a job earning this rate. Moreover, Porter inconsistently describes the $49.97 rate that he opines Tornabene could have earned as the "average median wage" and the "high" wage for a human resources manager in southeast-central Idaho (*compare* Dkt. 73-2 at 34 (stating $49.97 is "high" range) *with id.* at 60 (stating $49.97 is "average median wage"). This inconsistency suggests a calculation error underlying Porter's ultimate opinion that Tornabene could have earned approximately $104,000 annually. Accordingly, the Court excludes Porter's expert testimony that Tornabene could have earned this amount if she had properly mitigated her damages.

    **b.**  **Qualifications**

Tornabene also challenges Porter's qualifications to opine that the HR Director's principal duties are performed in a general office environment and that the EEOC regulations to do not require a business to allow remote work automatically as a reasonable accommodation (Dkt. 73-1 at 8-9). Defendants do not respond to Tornabene's argument that Porter may not opine on the law. Regardless, the Court agrees with Tornabene that Porter may not offer legal opinions. "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). Instructing the

jury on the law is the Court's "distinct and exclusive province." *Id.* (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). Moreover, whether the City complied with EEOC regulatory guidance does not appear to be an issue in this case.

Tornabene also challenges Porter's qualifications to opine on whether the HR Director position must be performed in the general office environment, arguing Porter has no "personal knowledge" about this issue. The Court, however, does not construe Porter's report as indicating he intends to opine on that issue. Rather, Porter's statement that "the principal duties of the position are performed in a general office environment" relates to Porter's review of the job description for the position and is a direct quote from that description (Dkt. 73-2 at 32; Dkt. 75-1 at ¶ 3 (noting Porter was quoting job description); *id.* at 51).

Finally, the Court declines to exclude any of Porter's opinions because they purportedly rely on hearsay or information that violates the best evidence rule (Dkt. 73-1 at 12). Rule 703 provides that an expert may rely on facts or data of which he is aware in forming an opinion, and if an expert "in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Tornabene fails to explain how the facts and data on which Porter relies are not the kind reasonably relied on by experts in his field.

### 3. Keith Pinkerton

Tornabene seeks to exclude two opinions of Defendants' economic expert, Keith Pinkerton, because those opinions rely on Porter's opinions. It is not uncommon for an expert to base his opinion in part on another expert's opinion. *Dura Auto Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Christiansen v. Syverson*, 516 F. Supp. 3d 1151, 1156 (D. Idaho 2021). A frequent example is a physician, who is not an expert in radiology, may rely on a

radiologist's diagnosis based on an x-ray. *Dura Auto Sys.*, 285 F.3d at 613. If, however, the second expert's opinion is not admissible, then the first expert's reliance on that opinion is necessarily flawed.

Pinkerton's "Rebuttal Opinion 4" is that Porter's opinions "indicate that no damages after March 2022 should have been considered" (Dkt. 73-2 at 74). In support of Rebuttal Opinion 4, Pinkerton relies on: (1) Porter's opinion that there were numerous job openings for which Tornabene is qualified; and (2) Porter's statement—which Porter made during a phone call with Pinkerton—that "Tornabene should have been able to fully mitigate future losses by no later than six months following termination" (*id.*). Porter, however, never disclosed this latter statement as an opinion (*see generally id.* at 20), and as discussed above, the Court excludes Porter's opinion that there were "numerous job openings" for which Tornabene is qualified because sufficient, reliable data did not support that opinion. Because Pinkerton's Rebuttal Opinion 4 is based only on an opinion the Court excludes and a statement that Porter did not disclose as an opinion, the Court excludes Pinkerton's testimony about Rebuttal Opinion 4.

Pinkerton's "Rebuttal Opinion 1" is also based—in part—on two of Porter's opinions. Rebuttal Opinion 1 relates to the duration of Tornabene's damage calculation, which is "through October 31, 2025" (*id.* at 71). Pinkerton opines that "this damage period does not align with known facts revealed during discovery" (*id.*). In support, Pinkerton partially relies on Porter's opinions that: (1) Tornabene's "job search reflected 'marginal effort in seeking new employment'"; and (2) Tornabene was qualified for "numerous job openings in the relevant geographic marketplace" (*id.*). As noted above, the Court excluded this latter opinion. For that reason, Pinkerton may not rely on the latter opinion to support Rebuttal Opinion 1.

**MEMORANDUM DECISION AND ORDER - 12**

The Court, however, did not exclude the former opinion regarding Tornabene's "marginal effort" in seeking new employment. Tornabene did not directly challenge this opinion. Moreover, Porter is qualified to provide the opinion and bases it on Tornabene's actual efforts to mitigate her damages. Additionally, Pinkerton also relies on the following facts for Rebuttal Opinion 1: (1) Tornabene's medical care provider stated on September 27, 2021, that Tornabene should be re-evaluated in eight weeks, but that re-evaluation apparently never occurred; (2) absent the evaluation, it is not possible to determine the period during which Tornabene required an accommodation; (3) absent a medical justification, Tornabene should have been able to mitigate her damages; and (4) Tornabene moved to Florida in March 2024. Tornabene does not challenge any of these bases for Rebuttal Opinion 1. Based on these facts, the Court concludes sufficient information supports Rebuttal Opinion 1, despite that Pinkerton may not rely on Porter's excluded opinion.

**B.  Defendants' Motion to Exclude Grimmett's Testimony**

Tornabene disclosed her treating nurse practitioner, Grimmett, as a non-retained expert. Tornabene's disclosure states that Grimmett will provide testimony and opinions consistent with Tornabene's treatment, her diagnoses and symptoms, required work-accommodations, and Grimmett's letters regarding required accommodations for Tornabene "to work in a safe place based on her ongoing symptoms resulting from long COVID-19" (Dkt. 55-2 at 5-6).

Defendants move to exclude Grimmett's testimony regarding Tornabene's ability to "perform the essential job functions from home" and an August 2021 letter, which he wrote "to whom it may concern" (Dkt. 74-1 at 7). In that letter, Grimmett wrote, among other things, that "I have reviewed [Tornabene's] essential job functions[,] and I feel that *she is fully capable of performing those functions from home effectively* through telephone conferences, Zoom

MEMORANDUM DECISION AND ORDER - 13

conferences, etc." (Dkt. 74-2) (emphasis added). Defendants argue Grimmett lacks the necessary expertise to testify to this opinion (*id.* at 5).

The Court agrees that Grimmett lacks the requisite expertise to opine regarding what functions are essential to the HR Director position and which functions can be effectively performed from home. The record does not reflect that Grimmett has any percipient knowledge about the position or that he has any specialized knowledge about the functions of human resources personnel. For this reason, Grimmett may not testify as to what functions were essential to performing the position, including whether a regular, in-person requirement was an essential function of the position.

Nevertheless, Grimmett is qualified as a medical care provider to testify regarding Tornabene's capabilities and limitations based on the physical conditions for which he treated her. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (noting treating provider my opine about diagnosis, prognosis, extent of disability, and other related matters); *St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010) (noting treating provider may opine "based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis"). Further, Grimmett is qualified to testify about Tornabene's capabilities and limitations as they relate to her performance of a job function. For example, Grimmett could testify that because of Tornabene's fatigue at the time, she needed to spread her tasks throughout the day so she could rest when necessary. However, to opine that Tornabene could physically perform the job functions (whether essential or not) of her position, Grimmett must identify the functions about which he is opining. During Grimmett's deposition, he suggested he does not remember what functions he concluded Tornabene could perform (Dkt. 74-2 at 10, p. 31, ll. 7-12) (testifying he could not remember reviewing the essential job

**MEMORANDUM DECISION AND ORDER - 14**

functions). An opinion that Tornabene could perform the job functions without identification of those specific functions lacks foundation and is inadmissible.

Because Grimmett lacks the expertise to opine on what functions were essential and the foundation to opine on which functions could be performed from home, the Court will exclude the sentence in Grimmett's August 2021 letter that "I have reviewed [Tornabene's] essential job functions[,] and I feel that she is fully capable of performing those functions from home effectively through telephone conferences, Zoom conferences, etc." (Dkt. 74-2). Currently, however, the Court is not convinced the remainder of the letter is inadmissible. Rather, Grimmett's personal knowledge and expertise likely support admissibility of the remaining statements in the letter including, for example, the nature of COVID-19, Tornabene's symptomology, his opinion that Tornabene should work from home, and the reasons for that opinion.

In opposition to Defendants' motion to exclude Grimmett's testimony, Tornabene argues Grimmett has the expertise to opine about "her ability to perform the essential functions from home" (Dkt. 76 at 6). In support, Tornabene repeatedly argues that Grimmett was "aware [Tornabene] had been performing her HR position from her home office for many months" and knew about her "lived experience of actually performing the essential functions of her job from her home" (*id.* at 2, 5; *see also id*. at 4) (arguing "being at the office was not *essential* because Tornabene was accommodated for months with being able to work from home"). These arguments, however, beg the question of whether Tornabene was actually performing all the essential functions of the position during the time she was working remotely. That the City allowed her to work remotely (along with many other employees) because of the COVID-19 pandemic does not necessarily prove she was effectively performing all the essential functions of her position from home. In other words, that Grimmett was aware Tornabene was and had been working remotely

**MEMORANDUM DECISION AND ORDER - 15**

does not support an opinion that Tornabene was effectively performing an essential function of the HR Director from home. That opinion is beyond Grimmett's expertise and foundation.

**IT IS ORDERED that:**

1. Defendants' Motion in Limine to Exclude Expert Testimony (Dkt. 74) is **GRANTED in part and DENIED in part**.

2. Plaintiff's Motion in Limine to Limit Testimony of Defendants' Expert Witnesses (Dkt. 73) is **GRANTED in part and DENIED in part**.

DATED: September 12, 2025

*Amanda K. Brailsford*
**Amanda K. Brailsford**
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 16