UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA TORNABENE,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF BLACKFOOT, a political subdivision of the State of Idaho,<br><br>　　　　　　　Defendant. | Case No. 4:22-cv-00180-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION** |

Pending before the Court is Defendants' Motion to Reconsider (Dkt. 101) the Court's Memorandum Decision and Order (MDO) granting in part and denying in part Plaintiff's motion in limine (Dkt. 83). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the record, including the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reason discussed below, the Court grants the motion for reconsideration.

## BACKGROUND

The Court set forth the factual background in detail in its prior MDO (Dkt. 83 at 1-2). The following background is relevant to the motion to reconsider: Plaintiff Lisa Tornabene brought this action against Defendants, the City of Blackfoot and its mayor, Marc Carroll (Dkt. 1). Tornabene alleged numerous claims, including claims under the Americans with Disabilities Act Amendments Act (ADA), 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act, 29 U.S.C. § 701, *et*

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 1**

*seq.*; the Idaho Human Rights Act (IHRA), Idaho Code § 67-5901, *et seq.*; Title VII of the Civil Rights Act (Title VII); the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983; and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* (Dkt. 1 at ¶¶ 33-84). Defendants moved for summary judgment, and the Court granted their motion in part, dismissing Tornabene's Count V for gender discrimination, Count VI for an equal protection violation, and Count VII for violation of the FMLA.[1]

Tornabene has two remaining claims against the City, which include her claims for disability discrimination based on her alleged wrongful termination and for the City's failure to accommodate her, both of which claims she alleged under the ADA and the IHRA.[2] In preparation for trial, both parties filed motions in limine (Dkts. 73, 74). Relevant here is Tornabene's motion to exclude the testimony of the City's retained experts, DeLyn Porter, a vocational rehabilitation counselor, and the testimony of Keith Pinkerton, an economist (Dkt. 73-1 at 2). The City seeks to introduce Porter's expert testimony to demonstrate that Tornabene could have but did not mitigate her damages and to show her wage-earning capacity.

In her motion in limine, Tornabene argued the Court should exclude Porter's expert testimony about available job postings within a 50-mile radius of Blackfoot, Idaho, because his report did not adequately disclose the sources on which he relied to identify those postings (Dkt. 73-1 at 11). Tornabene also asserted the Court should exclude Porter's testimony that

---

[1]   The motion to reconsider indicates that it is brought on behalf of both Defendants, the City and Carroll (Dkt. 101). Tornabene, however, only alleged claims against Carroll for violations of the Equal Protection Clause and of the FMLA (Dkt. 1 at ¶¶ 70-77 (Count VI); *id.* at ¶¶ 78–84 (Count VII)). Because the Court dismissed both those claims on summary judgment, Carroll is no longer a defendant in this case (Dkt. 53 at 24) (dismissing Counts V, VI, and VII).

[2]   Tornabene also alleged her disability discrimination and failure to accommodate claims under the Rehabilitation Act. She is no longer pursuing her claims under that Act, however (Dkt. 89 at 2 n.1).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 2**

Tornabene's most accurate wage-earning capacity is "$49.97 per hour, or the annual equivalent of $103,937.60" because this opinion is speculative and "based upon insufficient facts and unreliable principles and methods" (*id.* at 12; Dkt. 73-2 at 60). Finally, Tornabene sought to exclude Pinkerton's testimony to the extent it relied on Porter's challenged opinions (Dkt. 73-1 at 13).

In resolving Tornabene's motion to exclude Porter's testimony, the Court did not locate in his expert report (or the related record) the information on which he relied to support the challenged opinions. As a result, the Court agreed with Tornabene's characterization of Porter's opinions as unsupported by sufficient facts and data. At that time, however, the Court did not understand the information underlying Porter's opinions was publicly available on the Internet—a fact which neither Porter nor the City expressly stated; which Porter's report only inferred; and which Tornabene ignored. On reconsideration, the Court has investigated and determined the information on which Porter relies was publicly available to Tornabene. Accordingly, the Court modifies its rulings as discussed below.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not formally recognize the existence of a motion for reconsideration. A ruling on a motion in limine, however, is essentially a preliminary opinion that falls entirely within the district court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Accordingly, a court "is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## ANALYSIS

The City seeks reconsideration of the Court's in limine rulings: (1) excluding Porter's testimony about the available job postings identified in his expert report; (2) excluding Porter's testimony about Tornabene's wage-earning capacity if she had properly mitigated her damages;

MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 3

and (3) excluding Pinkerton's testimony to the extent he relies on Porter's challenged opinions (Dkt. 101-1). In challenging the Court's rulings, the City essentially raises two arguments. It contends that: (1) Porter identified the source of the job postings included in his report and other relevant information, and (2) his report does not contain a "calculation error" (*id.* at 3, 5). After careful reconsideration, the Court agrees.

### A.     Delyn Porter's Testimony

In his report, Porter identifies ten job postings which he opines Tornabene was qualified to pursue (Dkt. 73-2 at 35-58). In his expert report, Porter includes a chart showing for each posting the "employer," "job title," "location," "job description," and "job posting" (*id.*). This latter field—job posting—either identifies "Indeed.com" or a number which corresponds to a Department of Labor job posting (*id.*)

Challenging Porter's opinion, Tornabene argued that "nowhere is there any identification when those jobs were available, what databases they are from, or, quite frankly, whether they existed at all. None of these documents or alleged job openings were produced [in discovery or] included with [Porter's] report" (Dkt. 73-1 at 11). Because Porter had not produced the information on which he relied with his expert report, the Court excluded Porter's testimony about his opinion that there were "numerous job postings within a 50-mile radius of Blackfoot" for which "Tornabene [was] qualified to pursue" (Dkt. 83 at 9). In doing so, the Court overlooked the information contained in the "job posting" field of Porter's chart.

The City challenges this Court's ruling and argues that Porter did disclose where he located this information in his expert report--namely the City states Porter disclosed in his expert report that he relied on information from the Department of Labor and Indeed.com for purposes of identifying the job postings (Dkt. 101-1 at 3). On reconsideration, the Court was able to locate

every job posting Porter identified in his report from Indeed.com and the Idaho Department of Labor. In other words, the information on which Porter relied was publicly available to Tornabene. Because the information on which Porter relied was publicly available, he was not required to produce the information with his expert report. *See, e.g.*, *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1219 (D. Mont. 2015) (rejecting argument that expert was required to produce publicly available testing or literature); *cf. Powers v. McDonough*, No. 22-CV-08357, 2024 WL 3491008, at *2 n.1 (C.D. Cal. July 19, 2024) (rejecting argument that expert's disclosure was late where opposing party had access to information).

Further, Porter's report identifies "current" as the specific timeframe in which the job postings were available (s*ee, e.g.*, Dkt. 73-2 at 35 ("I have conducted a job search of *current* job openings within a 50-mile radius of Blackfoot, Idaho that Ms. Tornabene is considered qualified to pursue") (emphasis added); *id.* at 59 ("A quick review of *current* job openings has identified numerous positions. . . .) (emphasis added)). The Court understands Porter's reference to "current' to mean the date of his report, March 28, 2025. Accordingly, after careful reconsideration, the Court will allow Porter to testify that (1) around March 28, 2025, there were "numerous job postings within a 50-mile radius of Blackfoot" for which "Tornabene [was] qualified to pursue"; and (2) if Tornabene "were to actively seek new employment [around March 28, 2025,] she could secure new employment that would meet or exceed her earnings with the City" (*id.* at 59, 60).

Because the Court will allow Porter to testify about the available job postings, it addresses Tornabene's argument that those postings are unreliable data because the jobs Porter identifies are not "substantially equivalent" to Tornabene's position with the City (Dkt. 73-1 at 10). In support, Tornabene cites case law that "substantially equivalent employment" means "*virtually identical* promotional opportunities, compensation, job responsibilities, working conditions, and status as

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 5**

the position from which [the plaintiff] has been discriminately terminated" (*id.*) (emphasis added) (citing *Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351, 2018 WL 4899603, at *25 (D. Ariz. Oct. 9, 2018)). The Court disagrees the job postings are unreliable data.

As the Court noted in its prior ruling, not all courts have held that "substantially equivalent employment" means "virtually identical." For example, the Supreme Court describes substantially equivalent employment as "suitable employment." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982) (noting duty to mitigate "requires the claimant to use reasonable diligence in finding other suitable employment"); *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) (using term "suitable" employment). Meanwhile, other courts have construed substantially equivalent employment to mean "comparable employment." *See, e.g.*, *Brown v. Riverside Elementary Sch. Dist. No. 2*, No. CV-21-01569-PHX-DJH, 2024 WL 474528, at *5 (D. Ariz. Feb. 7, 2024) ("Other districts have construed the first prong of *Odima* as 'comparable' employment opportunities."). Although the Court agrees with Tornabene that the job postings Porter identifies are not likely "virtually identical" to Tornabene's position with the City, it disagrees available jobs must be "virtually identical" for purposes of mitigation—particularly in rural Idaho where the opportunity for virtually identical positions is unlikely.

The City also challenges the Court's conclusion that Porter failed to provide sufficient data to support his opinion that Tornabene's most accurate wage-earning capacity based on her vocation profile is "an annual equivalent of $103,937.60" (Dkt. 73-1 at 12; Dkt. 73-2 at 60). Porter bases this opinion on his conclusion that Tornabene could have obtained a job earning $49.97 an hour (Dkt. 73-2 at 60). On reconsideration, the Court understands Porter's reliance on $49.97 an hour to be based on publicly available employment and wage data, which Porter compiled from the Idaho Department of Labor Occupational Employment & Wage Survey report for the State of

Idaho, Southeast-Central Idaho labor market, Pocatello MSA labor market and Idaho Falls MSA labor market (Dkt. 73-2 at 33-34). Further, construing the chart setting forth this compiled data and the text of Porter's report, the Court understands Porter's opinion to be that Tornabene's accurate wage-earning capacity to be the high of the average median range for jobs in southeast central Idaho (*id.* at 34, 60). Accordingly, after careful reconsideration, the Court will allow Porter to testify that $103,937.60 "most accurately reflects [Tornabene's] wage-earning capacity based on her vocation profile" (*id.* at 60).

    **B.**    **Keith Pinkerton's Testimony**

The City also challenges the Court's ruling excluding Pinkerton's testimony to the extent this testimony may rely on Porter's previously excluded opinions (Dkt. 101-1 at 6-7). Because the Court grants the City's motion for reconsideration and allows Porter to testify about available job postings and Tornabene's wage-earning capacity, the Court reconsiders its decision regarding Pinkerton's Rebuttal Opinion 1 and will allow Pinkerton to rely on Porter's opinions to testify about his Rebuttal Opinion 1.

The City, however, does not directly challenge the Court's ruling on Pinkerton's Rebuttal Opinion 4. The Court continues to rule that Pinkerton's testimony about his Rebuttal Opinion 4 is excluded. That opinion improperly relies on Porter's undisclosed statement to Pinkerton during a phone call that "Tornabene should have been able to fully mitigate future losses by no later than six months following termination" (Dkt. 73-2 at 74, ¶ 2).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 7**

**ORDER**

IT IS ORDERED that:

1. The City of Blackfoot's Motion for Reconsideration (Dkt. 101) is **GRANTED**.

DATED: October 30, 2025

Amanda K. Brailsford
U.S. District Court Judge